IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JOSE REYES VALDEZ, | § | |
| Reg. No. 90547-380, | § | |
|     Movant, | § | |
| | § | EP-19-CV-323-DB |
| v. | § | EP-17-CR-1080-DB-3 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
|     Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Jose Reyes Valdez challenges his 151-month sentence through a motion to vacate, set aside or reduce sentence pursuant to 18 U.S.C. § 2255.   Mot. to Vacate, ECF No. 1195.[1]   The United States of America (the Government) opposes the motion.   Gov't's Resp., ECF No. 1227.   The Court will deny the motion for the reasons discussed below.   The Court will additionally deny Valdez a certificate of appealability.

## BACKGROUND AND PROCEDURAL HISTORY

Valdez coordinated the distribution of large quantities of cocaine and marijuana for a drug-trafficking organization based in El Paso, Texas, from March of 2015 through July of 2016.   Plea Agreement 8, 11, ECF No. 678.   He recruited numerous individuals to deliver narcotics to cities throughout the United States.   Id. at 9.

---

[1] "ECF No." refers to the Electronic Case Filing number for documents docketed in EP-17-CR-1080-DB-3.   Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

Valdez was indicted for conspiracy to possess a controlled substance with intent to distribute (counts one and two), possession with intent to distribute a controlled substance (count four), and conspiracy to launder monetary instruments (count six). Indictment, ECF No. 8. He was also given notice the Government would seek an enhanced punishment based on his prior state-court conviction for solicitation to possess marijuana for sale in Maricopa County, Arizona. Information, ECF No. 331. He was subsequently charged in a superseding indictment with conspiracy to possess a controlled substance with intent to distribute (counts one and two), possession with intent to distribute a controlled substance (count four), and conspiracy to launder monetary instruments (count six). Superseding Indictment, ECF No. 450.

Valdez negotiated a plea agreement with the Government. Plea Agreement. Under its terms, he agreed to plead guilty to count two of the superseding indictment charging him with conspiracy to possess a controlled substance—specifically, more than 100 kilograms of marijuana—with intent to distribute, in violation of 21 U.S.C. §§ 846, 841. Id. at 1. He admitted "that he joined in an agreement . . . to possess with the intent to distribute narcotics, that he knew the unlawful purpose of the agreement . . ., and that the scope of the conspiracy was at least 100 kilograms of marijuana." Id. at 10–11. He also voluntarily waived his right to contest his sentence in any post-conviction proceeding except on the grounds that his counsel provided constitutionally ineffective assistance or the prosecutor engaged in misconduct. Id. at 5–6. In exchange, he obtained the Government's promise it would move to dismiss the remaining counts against him. Id. at 1.

The Court determined, based on a total offense level of 34 and a criminal history category I, that Valdez's guideline sentencing range was 151 to 188 months in prison. Statement of Reasons 1, ECF

No. 1132.  It sentenced Valdez at the bottom-of-the-guidelines rage to 151 months' imprisonment.  J. Crim. Case 2, ECF No. 1131.

Valdez did not appeal.

According to Bureau of Prisons (BOP) records, Valdez is currently incarcerated at the La Tuna Federal Correctional Institution in Anthony, Texas.  See BOP, Find an Inmate, https://www.bop.gov/inmateloc/ (search for Reg. No. 90547-380) (last visited Mar. 17, 2021).  His anticipated release date is November 10, 2027.  Id.

Valdez now asserts three broad grounds for relief in his motion.  First, he argues the Court's "cumulative errors [led] to the loss of its subject matter jurisdiction."  Mot. to Vacate 5.  Second, he claims his trial counsel provided constitutionally ineffective assistance.  Id. at 7.  Finally, he maintains his appellate counsel "was ineffective when he filed his *Anders* brief with [sic] non-frivolous issues existed for appeal."  Id. at 8.  He asks for an evidentiary hearing.  Id. at 10.  He also asks the Court "to grant the petition."  Id. at 12.

## APPLICABLE LAW

A court is normally "entitled to presume that the defendant stands fairly and finally convicted" after the defendant has exhausted or waived any right to appeal.  United States v. Willis, 273 F.3d 592, 595 (5th Cir. 2001) (citing United States v. Frady, 456 U.S. 152, 164 (1982)).  It may, however, consider a defendant's collateral attack on a federal sentence under limited circumstances through a motion brought pursuant to 28 U.S.C. § 2255.  Pack v. Yusuff, 218 F.3d 448, 451 (5th Cir. 2000); Cox v. Warden, 911 F.2d 1111, 1113 (5th Cir. 1990).  These limited circumstances include when (1) the "sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum

3

authorized by law, or (4) the sentence is otherwise subject to collateral attack."   United States v. Seyfert, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted).   The reviewing court requires a movant to establish his claims of error by a preponderance of the evidence.   Wright v. United States, 624 F.2d 557, 558 (5th Cir. 1980) (citing United States v. Kastenbaum, 613 F.2d 86, 89 (5th Cir. 1980)).   If the court concludes that the movant's motion is meritorious, it must "vacate and set the judgment aside and . . . discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."   28 U.S.C. § 2255(b).

## ANALYSIS

### A.   Cumulative Error

Valdez argues that the Court's "cumulative errors [led] to the loss of its subject matter jurisdiction." Mot. to Vacate 5.   But he subsequently concedes "the district court does have subject matter jurisdiction." Id. at 6.

Valdez voluntarily waived his right to contest his sentence in any post-conviction proceeding except on the grounds that his counsel provided constitutionally ineffective assistance or the prosecutor engaged in misconduct.   Plea Agreement 5–6.   Hence, he waived his right to bring this claim.

Additionally, a movant may not rely on a § 2255 motion as a substitute for a direct appeal. Frady, 456 U.S. at 165; United States v. Shaid, 937 F.2d 228, 231 (5th Cir. 1991).   A movant must either (1) demonstrate "cause" for not raising the issue on direct appeal and "actual prejudice" resulting from the error; or (2) show that he is "actually innocent" of the crime for which he was convicted when raising issues of jurisdictional or constitutional magnitude for the first time in a motion seeking collateral relief.   United States v. Torres, 163 F.3d 909, 911 (5th Cir. 1999).   The cause-and-actual-prejudice standard is "significantly more rigorous than even the plain error standard . . .   applied on

4

direct appeal." United States v. Gaudet, 81 F.3d 585, 589 (5th Cir. 1996). If the movant does not

demonstrate "cause" for not raising the issue on direct appeal and "actual prejudice" resulting from the

error, then he is procedurally barred from attacking his conviction or sentence through a § 2255 motion.

United States v. Drobny, 955 F.2d 990, 994–95 (5th Cir. 1992).

Valdez has not shown that "some objective factor external to the defense" prevented him from

timely raising the claims he now advances. Murray v. Carrier, 477 U.S. 478, 488 (1986). He also has

not shown " 'that the errors at his trial created a possibility of prejudice, but that they worked to his

actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.' "

Shaid, 937 F.2d at 231 (quoting Frady, 456 U.S. at 170). Consequently, he is procedurally barred from

attacking the purported cumulative errors by the Court.

Furthermore, the cumulative error doctrine provides for reversal only when an aggregation of

non-reversible errors that do not individually warrant reversal, cumulatively deny a defendant's

constitutional right to a fair trial. United States v. Delgado, 672 F.3d 320, 343–44 (5th Cir. 2012) (en

banc). As a result, the cumulative error doctrine is used only in "rare instances." Id. at 344. Reversal

is justified "only when errors 'so fatally infect the trial that they violated the trial's fundamental

fairness.' " Id. at 344 (quoting United States v. Fields, 483 F.3d 313, 362 (5th Cir. 2007)).

Valdez has not shown his criminal proceedings were fundamentally unfair. Indeed, he "has not

established any error [by the Court]; therefore, there is nothing to cumulate." United States v.

McIntosh, 280 F.3d 479, 484 (5th Cir. 2002). He is not entitled to relief on this claim.

## B. Ineffective Assistance of Trial Counsel

Valdez also claims that his trial counsel provided constitutionally ineffective assistance when he

failed to (1) "challenge the rationale for the superseding indictment," (2) subject "the Government's case

5

to strict adversarial testing," and (3) object to the Court's "sentencing errors." Mot. to Vacate 7. More specifically, he contends that, despite his purported "withdrawal from the Conspiracy, . . . Counsel was uninterested in anything [he] had to say to formulate a legitimate defense in this case." Id. at 8. He maintains that his counsel "should have filed a pre-trial Motion to dismiss the case for Entrapment, [but] this issue was never broached by counsel." Id. He asserts that he "was not reasonably informed about his legal options and the alternatives that were available to him." Id. at 10. He suggests that his guilty plea was "not knowingly and voluntary made [because] he was misinformed about the critical elements of the charged offense." Id. Finally, he contends that "the district court incorrectly denied his offense level cap under Sentencing Guideline § 2D1.8(a)(2). Id. at 6.

The Sixth Amendment guarantees an accused the right to "the assistance of counsel for his defense" in all criminal prosecutions. U.S. CONST. amend. VI. This right includes "the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970).

A movant's "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under [§] 2255." Massaro v. United States, 538 U.S. 500, 509 (2003). Once raised, a movant's ineffective-assistance claim it is analyzed under the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail, a movant must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defense. Strickland, 466 U.S. at 689–94.

To establish deficient performance, a movant must show that his counsel's assistance fell " 'below an objective standard of reasonableness.' " United States v. Conley, 349 F.3d 837, 841 (5th Cir. 2003) (quoting Strickland, 466 U.S. at 688). This means a movant must show that (1) counsel's

6

performance was outside the broad range of what is considered reasonable assistance and (2) this deficient performance led to an unfair and unreliable conviction and sentence.   United States v. Dovalina, 262 F.3d 472, 474–75 (5th Cir. 2001).   In assessing if a particular attorney's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' "   Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

"[T]o establish prejudice, a '[movant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome.' "   Wiggins v. Smith, 539 U.S. 510, 534 (2003) (quoting Strickland, 466 U.S. at 694).   "[I]neffective assistance of counsel during a sentencing hearing can result in Strickland prejudice because 'any amount of [additional] jail time has Sixth Amendment significance.' "   Lafler v. Cooper, 566 U.S. 156, 165 (2012) (quoting Glover v. United States, 531 U.S. 198, 203 (2001)).

If a movant fails to prove one prong, it is not necessary to analyze the other.   Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir.1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

### (1) Superseding Indictment

Valdez claims his counsel provided ineffective assistance when he failed "to challenge the rationale for the superseding indictment."   Mot to Vacate 7.

7

"A defect in an indictment is jurisdictional, and such a defect is not waived by a guilty plea." United States v. Rivera, 879 F.2d 1247, 1251 (5th Cir. 1989).   Consequently, a challenge to an indictment "may be raised for the first time in a § 2255 petition because such an error divests the sentencing court of jurisdiction."   United States v. Osiemi, 980 F.2d 344, 345 (5th Cir. 1993) (citing United States v. Harper, 901 F.2d 471, 472 (5th Cir.), reh'g. denied, 907 F.2d 146 (1990)).

"The indictment's most basic purpose is to fairly inform a defendant of the charge against him." United States v. Gordon, 780 F.2d 1165, 1169 (5th Cir. 1986).   At a minimum, it "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."   FED. R. CRIM. P. 7(c)(1).   It meets minimal constitutional standards "if it contains the elements of the charged offense, fairly informs the defendant of the charges against him, and ensures that there is no risk of future prosecutions for the same offense."   United States v. Harms, 442 F.3d 367, 372 (5th Cir. 2006). It may set forth the offense in the words of the statute itself as long as the statutory language unambiguously sets out all the elements necessary to constitute the offense.   United States v. Stanley, 765 F.2d 1224, 1239–40 (5th Cir. 1985).

"In reviewing a challenge to an indictment alleging that it fails to state an offense, the court is required to take the allegations of the indictment as true and to determine whether an offense has been stated."   United States v. Crow, 164 F.3d 229, 234 (5th Cir. 1999).   The issue is "not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards."   Id.   The court's determination of the "validity of an indictment is governed by practical, not technical considerations."   Id. at 235.

In order to prove the existence of a conspiracy to possess with intent to distribute marijuana—as alleged in count two of Valdez's superseding indictment—"the government is required to prove three

essential elements beyond a reasonable doubt: first, that an agreement existed to violate the federal

narcotics laws; second, that the defendant knew of the existence of the agreement; and third, that he

voluntarily participated in the conspiracy."   United States v. Brackett, 113 F.3d 1396, 1399 (5th Cir.

1997).

Count two of the superseding indictment alleged:

COUNT TWO
(21 U.S.C. § 846 & 841(a)(1) & 841(b))
That beginning on or about March of 2015 and continuing through and including
on or about July of 2016, in the Western District of Texas, and elsewhere, Defendants,
* * * *
JOSE REYES VALDEZ, a.k.a. Paco (3);
* * * *
knowingly, intentionally, and unlawfully conspired, combined, confederated, and agreed
together, with others to the Grand Jury known and unknown, to commit offenses against
the United States, in violation of Title 21, United States Code, Section 846, that is to say,
they conspired to possess a controlled substance, which offense involved marijuana, a
Schedule I Controlled Substance, with intent to distribute same, contrary to Title 21, United
States Code, Sections 841(a)(1) and 841(b)(1)(B)(vii) in the quantities set forth below:
* * * *

| DEFENDANT | QUANTITY | STATUTE |
|---|---|---|
| JOSE REYES VALDEZ, a.k.a. Paco (3) | 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana | 21 U.S.C. § 841(b)(1)(B)(vii) |

Count two alleges an agreement existed to violate the federal narcotics laws, Valdez knew of the

existence of the agreement, and Valdez voluntarily participated in the conspiracy.   It contains the

elements of the charged offense, fairly informs Valdez of the charge against him, and ensures Valdez is

not at risk of future prosecutions for the same offense.   Hence, it conforms to minimal constitutional

standards—and states an offense.    As a result, Valdez's counsel had no basis to challenge count two of the superseding indictment.

The Speedy Trial Act requires that criminal defendants be tried "within seventy days from the filing date . . . of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs."    18 U.S.C. § 3161(c)(1).    The Government may not circumvent the speedy trial guarantee through the simple expedient of obtaining a superseding indictment with a minor correction.    United States v. Bermea, 30 F.3d 1539, 1567 (5th Cir. 1994).    The "case presents a different profile," however, when the Government seeks to "widen the scope of the criminal investigation so as to try [other] conspirators" and is not "merely correcting the indictment."    United States v. Parker, 505 F.3d 323, 327 (5th Cir. 2007). In that case, "[t]here is no abuse of the superseding indictment system" and the starting point for the speedy trial clock is thus reset to the date of the arraignment on the superseding indictment.    Id.

Count two of the superseding indictment varied from count two in the original indictment in only one way—by adding Joe John Pasillas as an additional defendant.    Indictment 4–6; Superseding Indictment 4–6.    Thus, the rationale for the superseding indictment was to add an additional defendant. The addition widened the scope of the offense and reset the speedy trial clock.    The superseding indictment did not merely make a correction to the indictment.    There was no abuse of the superseding indictment system.

Additionally, the Court granted the Government's motion to designate this case as a complex case after the grand jury returned the original indictment.    Gov't's Mot. to Designate Case Complex, ECF No. 324-1; Text Order, ECF No. 315.    This designation required a tolling of the Speedy Trial Act. United States v. Williams, 314 F. App'x 656, 659 (5th Cir. 2009) (citing 18 U.S.C. § 3161(h)(8)(B)(ii)).

Consequently, for all of these reasons, Valdez's counsel could not formulate a viable objection to the superseding indictment.   And his counsel was "not required to file frivolous motions or make frivolous objections."   Green v. Johnson, 160 F.3d 1029, 1037–1042 (5th Cir. 1998).   Therefore, his counsel was not ineffective—and Valdez is not entitled to relief—because he failed to object to the superseding indictment.

### (2)  Strict Adversarial Testing

Valdez also asserts that his counsel provided ineffective assistance when he failed to subject "the Government's case to strict adversarial testing."   Mot. to Vacate 7.   Specifically, he contends that, despite his purported "withdrawal from the Conspiracy, . . . Counsel was uninterested in anything [he] had to say to formulate a legitimate defense in this case."   Id. at 8.   He maintains that his counsel "should have filed a pre-trial Motion to dismiss the case for Entrapment, [but] this issue was never broached by counsel."   Id.   He claims that he "was not reasonably informed about his legal options and the alternatives that were available to him."   Id. at 10.   He suggests that his guilty plea was "not knowingly and voluntary made [because] he was misinformed about the critical elements of the charged offense."   Id.

In United States v. Chronic, the Supreme Court explained that "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable."   466 U.S. 648, 659 (1984).   For Cronic to apply, however, "the attorney's failure must be complete."   Bell v. Cone, 535 U.S. 685, 697 (2002).   "[A] case does not come under Cronic merely because counsel failed to "oppose the prosecution . . . at specific points" in the trial.   Id.   It is not enough for the defendant to show mere "shoddy representation" or to prove the existence of "errors, omissions, or strategic

11

blunders" by counsel.   Jackson v. Johnson, 150 F.3d 520, 525 (5th Cir. 1998). "[B]ad lawyering,

regardless of how bad, does not support the [per se] presumption" of prejudice under Cronic.   Childress

v. Johnson, 103 F.3d 1221, 1229 (5th Cir. 1997) (quoting McInerney v. Puckett, 919 F.2d 350, 353 (5th

Cir. 1990)).

### (a)   Withdrawal from Conspiracy

Valdez claims he brought up his withdrawal from the conspiracy before his arrest with his

counsel.   Mot. to Vacate 8.   He maintains his "[c]ounsel was uninterested in anything Valdez had to

say to formulate a legitimate defense in his case."   Id.

"Conspiracy is an inchoate offense, the essence of which is an agreement to commit an unlawful

act."   Ianelli v. United States, 420 U.S. 770, 777 (1975).   "Ordinarily, the fundamental elements of the

offense of conspiracy are an agreement between two or more persons to commit a crime and an overt act

by one of them in furtherance of the agreement."   United States v. Malatesta, 590 F.2d 1379, 1381 (5th

Cir. 1979) (en banc).   "However, in a conspiracy prosecution under 21 U.S.C. § 846, as is involved

here, the government need not prove any overt act in furtherance of the conspiracy."   United States v.

Wilson, 657 F.2d 755, 759 (5th Cir. 1981).   "If the conspiracy does not even require the commission of

an overt act, a defendant can never timely withdraw and can never negate liability as to the conspiracy

charge."   United States v. Salazar, 751 F.3d 326, 331 (5th Cir. 2014).   "A withdrawal from a drug

conspiracy may [only] limit the amount of drugs a district court can rely on as relevant conduct for

purposes of sentencing."   Id.

As a result, Valdez's counsel could not formulate a viable defense based on his purported

withdrawal from the drug-trafficking conspiracy.   His counsel was "not required to file frivolous

motions or make frivolous objections." <u>Green</u>, 160 F.3d at 1037–1042.   Therefore, his counsel was
not ineffective because he failed to raise the alleged withdrawal as a defense.

### (b) Entrapment

Valdez maintains that his counsel "did not hire a private investigator to look for possible
defenses such as entrapment."  Mot. to Vacate 8.  He explains Co-defendant Carmen Alfredo Marquez-
Castill "introduced [him] to Alonzo . . ., but it turned out that . . . Alonzo . . . had colluded with a DEA
Agent to engineer the conspiracy that led to Valdez's arrest."  <u>Id.</u>  Hence, Valdez argues, his counsel
should have filed a pre-trial Motion to dismiss the case for Entrapment, [but] this issue was never
broached by counsel."  <u>Id.</u>

"The entrapment defense focuses on the intent or predisposition of the defendant to commit the
crime rather than on the conduct of the government's agents."  <u>United States v. Yater</u>, 756 F.2d 1058,
1062 (5th Cir. 1985).  "The Government's provision of aid, incentive, and opportunity for commission
of the crime amounts to an entrapment only if it appears that the defendant has done that which he
would never have done were it not for the inducement of Government operatives."  <u>United States v.
Bower</u>, 575 F.2d 499, 504 (5th Cir. 1978).

Valdez admitted that he entered into an agreement to coordinate the distribution of large
quantities of cocaine and marijuana for a drug-trafficking organization from March of 2015 through July
of 2016.  Plea Agreement 8, 10, 11.  He further admitted that he recruited numerous individuals to
deliver narcotics to cities throughout the United States.  <u>Id.</u> at 9.

Valdez's admissions do not suggest—or even hint—that he never would have engaged in drug
trafficking but for the inducement of Government operatives.  Indeed, his statements do not make it "

'patently clear' or 'obvious' that [he] was entrapped as a matter of law." *Bower*, 575 F.2d at 504 (quoting United States v. Groessel, 440 F.2d 602, 606 (5th Cir. 1971).

Based on Valdez's admissions, his counsel could not formulate a viable entrapment defense. And, as the Court noted above, his counsel was "not required to file frivolous motions or make frivolous objections." Green, 160 F.3d at 1037–1042.   Therefore, his counsel was not ineffective because he failed to raise the alleged withdrawal as a defense.

### (c) Failure to Inform Valdez of Legal Options

Valdez claims that he "was not reasonably informed about his legal options and the alternatives that were available to him." Mot. to Vacate 10.   He avers "Counsel left him in the dark, without access to his discovery, with respect to the nitty gritty of the plea, and especially to what punishment he was looking at." Id.

When Valdez signed the plea agreement, he agreed to plead guilty to count two of the superseding indictment.   Plea Agreement 1.   Count two charged him with conspiracy to possess with intent to distribute more than 100 kilograms of marijuana.   Superseding Indictment 4–6.   Valdez claimed in the plea agreement that he understood he faced a range of punishment "of not less than ten (10) years to life."   Plea Agreement 2.   He acknowledged his attorney had advised him "of the nature of the charges, any possible defense to the charges, and range of possible sentences."   Id. at 7.   He agreed to the factual basis which described how he "joined in an agreement . . . to possess with intent to distribute narcotics, that he knew the unlawful purpose of the agreement that he entered into, and that the scope of the conspiracy was at least 100 kilograms of marijuana."   Id. at 7, 10–11.

14

Documents signed by a defendant in connection with a guilty plea are entitled to "great evidentiary weight." United States v. Abreo, 30 F.3d 29, 32 (5th Cir. 1994). The plea agreement shows that Valdez understood the charge against him and the consequences that might befall him.

At his plea hearing, Valdez advised the Court—under oath—that he was completely satisfied with the assistance of his attorney. Plea Tr. 10:22–10:25, ECF No 1201. He indicated that he did not have any concerns or complaints about anything that his lawyer had done or failed to do. Id. at 11:1–11:5. He claimed that he understood the elements of the offense. Id. at 12:8–13:3. He said that he also understood the maximum permissible punishment. Id. at 13:15–14:12. He admitted that his counsel had provided an opinion on the sentence the Court might imposed but he acknowledged that the Court was not bound by the opinion. Id. at 22:13–23:13. He also acknowledged the rights he was waiving by pleading guilty. Id. at 24:19–28:8. He agreed that he read, understood, and discussed the plea agreement with his lawyer. Id. at 28:16–29:4. He also agreed with the factual summary presented by the Government. Id. at 33:6–35:6.

"Solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73–74 (1977). Consequently, "a defendant ordinarily will not be heard to refute [his] testimony given at a plea hearing while under oath." United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir. 1998) (citing United States v. Fuller, 769 F.2d 1095, 1099 (5th Cir.1985)).

Valdez has the burden of showing that he is entitled to relief. Barnes v. United States, 579 F.2d 364, 366 (5th Cir. 1978). His plea agreement and plea hearing transcript reasonably lead to a conclusion that his counsel informed him of his legal options before he entered his plea. The only evidence to the contrary is Valdez's self-serving and conclusory allegation in his motion—which refutes

15

his testimony under oath at his plea hearing.   His conclusory allegation is simply insufficient to obtain §

2255relief.   United States v. Woods, 870 F.2d 285, 288 n.3 (5th Cir. 1989) ("mere conclusory

allegations on a critical issue" are insufficient to support Section 2255 relief).

### (d) Guilty Plea Not Knowingly and Voluntarily Made

Valdez suggests that his guilty plea was "not knowingly and voluntary made [because] he was

misinformed about the critical elements of the charged offense."   Mot. to Vacate 10.

A constitutionally valid guilty plea must be both knowing and voluntary.   Cervantes, 132 F.3d at

1110.   "A plea may be involuntary either because the accused does not understand the nature of the

constitutional protections that he is waiving . . . or because he has such an incomplete understanding of

the charge that his plea cannot stand as an intelligent admission of guilt."   Henderson v. Morgan, 426

U.S. 637, 645 n.13 (1976).   The critical issue in determining whether a plea was voluntary and

intelligent is "whether the defendant understood the nature and substance of the charges against him, and

not necessarily whether he understood their technical legal effect."   Taylor v. Whitley, 933 F.2d 325,

329 (5th Cir. 1991).   If the record shows the defendant "understood the charge and its consequences," a

court will uphold a guilty plea as voluntary.   Davis v. Butler, 825 F.2d 892, 893 (5th Cir. 1987).

When Valdez signed the plea agreement, he acknowledged that his attorney had advised him "of

the nature of the charges, any possible defense to the charges, and range of possible sentences."   Plea

Agreement 7.   When he appeared at his plea hearing, he claimed—under oath—that he understood the

elements of the offense.   Plea Tr. 12:8–13:3.   He said that he also understood the maximum

permissible punishment.   Id. at 13:15–14:12.   The only evidence supporting Valdez's claim that his

guilty plea was not knowingly and voluntary made is his self-serving allegation in his motion.   Since

the record shows that Valdez was fully aware of—and informed about—the nature of his plea, his claim that he his plea was involuntary fails.

### (e) Sentencing Errors

Valdez argues that his counsel provided ineffective assistance when he failed to object to the Court's "sentencing errors." Mot. to Vacate 7. He asserts that "the district court incorrectly denied his offense level cap under Sentencing Guideline § 2D1.8(a)(2). Id. at 6.

Sentencing Guideline § 2D1.8 addresses conspiracies to rent or manage drug establishments. U.S. SENTENCING GUIDELINES MANUAL § 2D1.8 (U.S. SENTENCING COMM'N 2016). It is not relevant to calculating a sentence in Valdez's case which involves a conspiracy to possess with intent to distribute 100 kilograms of marijuana. Superseding Indictment 4–6. Thus, the Court did not err when it did not consider Sentencing Guideline § 2D1.8.

Further, Valdez "voluntarily and knowingly waive[d] any right to contest the sentence or the manner in which it was determined in any post-conviction proceeding, including, but not limited to, a proceeding pursuant to 28 U.S.C. § 2255." Plea Agreement 5.

Finally, the Court observes that claims concerning a district court's application of the Sentencing Guidelines are not cognizable under § 2255. United States v. Faubion, 19 F.3d 226, 232 (5th Cir.1994) (holding defendant's claim that district court erred in making upward departure under Sentencing Guidelines could not be considered in § 2255 proceeding); United States v. Walker, 68 F.3d 931, 934 (5th Cir. 1995) ("A district court's calculation under or application of the sentencing guidelines standing alone is not the type of error cognizable under section 2255."). This is because the claims "could . . . have been raised on direct appeal." Gaudet, 81 F.3d at 589. And "[a] district court's technical application of the [Sentencing] Guidelines does not rise to a constitutional issue." United States v.

Payne, 99 F.3d 1273, 1281–82 (5th Cir. 1996); see also United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) ("Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.   Non-constitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding.).

### C.   Ineffective Assistance of Appellate Counsel

Valdez claims that his appellate counsel "was ineffective when he filed his Anders brief [when] non-frivolous issues existed for appeal."   Mot. to Vacate 8.   But he did not file a notice of appeal.   Hence, his claim cannot have any merit.

## EVIDENTIARY HEARING

A motion brought under § 2255 may be denied without a hearing if "the files and records of the case conclusively show that the prisoner is entitled to no relief."   28 U.S.C. § 2255(b); see also United States v. Bartholomew, 974 F.2d 39, 41 (5th Cir. 1992) (holding that there was no abuse of discretion in denying a § 2255 motion without a hearing where the movant's assertions of ineffective assistance were wholly conclusory in nature and refuted by reference to the record itself).   Further, "[a] hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.   Nor is a hearing required where [movant's] allegations are affirmatively contradicted by the record."   United States v. Guerra, 588 F.2d 519, 521 (5th Cir. 1979).

The Court finds that the record in this case is adequate to dispose fully and fairly of Valdez's claims.   It further finds that, because it can resolve the issues on the basis of the conclusive record, an evidentiary hearing is unnecessary.   United States v. Santora, 711 F.2d 41 (5th Cir. 1983).

## CERTIFICATE OF APPEALABILITY

18

A movant may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Id. § 2253(c)(2). In cases where a district court rejects a movant's constitutional claims on the merits, the movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (applying Slack to a certificate of appealability determination in the context of § 2255 proceedings). To warrant a certificate as to claims that a district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484.

Here, Valdez's motion fails because he has not identified a transgression of his constitutional rights or alleged an injury that would, if condoned, result in a complete miscarriage of justice. Additionally, reasonable jurists could not debate the Court's reasoning for the denial of his claims on substantive or procedural grounds—or find that his issues deserve encouragement to proceed. Miller El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack, 529 U.S. at 484). The Court will therefore not issue a certificate of appealability.

## CONCLUSION AND ORDER

The Court concludes after reviewing the record that Valdez's claims are without merit and that he is not entitled § 2255 relief. The Court further concludes that Valdez is not entitled to a certificate of appealability. The Court accordingly enters the following orders:

19

**IT IS ORDERED** that Valdez's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody (ECF No. 1195) is **DENIED**, and his civil cause is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Valdez is **DENIED** a **CERTIFICATE OF APPEALABILITY**.

**IT IS FURTHER ORDERED** that all pending motions in this cause, if any, are **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

SIGNED this _____25th_____ day of March 2021.


_____
DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE

20